VERNETTA RUSSELL, as Administratrix of the Estate of EDWARD L. RUSSELL, Deceased, Respondent, v. NEW YORK STATE ELECTRIC & GAS CORPORATION et al., Appellants. NEW YORK STATE ELECTRIC & GAS CORPORATION, Third-Party Plaintiff-Appellant, v. BRADLEY AND WILLIAMS, INC., Third-Party Defendant-Respondent.

GLEN PRENTICE, Respondent, v. NEW YORK STATE ELECTRIC & GAS CORPORATION et al., Appellants. NEW YORK STATE ELECTRIC & GAS CORPORATION, Third-Party Plaintiff-Appellant, v. BRADLEY AND WILLIAMS, INC., Third-Party Defendant-Respondent.

Third Department, August 2, 1960.

*James A. FitzPatrick* for New York State Electric & Gas Corporation, third-party plaintiff-appellant.

*Robinson & Holcombe* for Torrington Construction Company, Inc., appellant.

*J. Byron O'Connell* for Vernetta Russell, as administratrix, respondent.

*John R. Cummins, quondam attorney,* for Glen Prentice, respondent.

*Charles G. Tierney* for third-party defendant-respondent.

*Per Curiam.* The defendant, New York State Electric and Gas Corporation (hereinafter referred to as Power Company) appeals from judgments for plaintiffs which resulted from a jury verdict awarding money damages and from directed verdicts dismissing the action against the third-party defendant Bradley and Williams (hereinafter referred to as Bradley). The defendant Torrington Construction Company (hereinafter referred to as Torrington) appeals from said judgments for damages to plaintiffs against it.

The decedent Russell and plaintiff Prentice were employees of Bradley which was engaged in relocating poles and wires, necessitated by a road widening and reconstruction of Route 9 between Keesville and Elizabethtown, pursuant to a written contract with the Power Company. The defendant Torrington was the contractor doing the road work, pursuant to a contract with the State of New York.

The Power Company instituted a third-party action against Bradley to recover over in the event of verdicts against it, alleging indemnification pursuant to a clause in the contract and further alleging that Bradley was guilty of active negligence while the Power Company could be responsible to plaintiffs, if at all, for passive negligence.

The action based upon indemnification was dismissed at the close of all of the evidence. After the jury returned a verdict against the Power Company for active negligence the court directed a verdict for Bradley on the ground it could not be liable over to a party also actively negligent.

Decedent Russell and plaintiff Prentice on July 2, 1957, at the direction of their foreman, climbed a pole located along the road under construction, removed a transformer, cut all of the remaining wires attached to the pole and were awaiting further instructions from the foreman when the pole gave way and fell to the ground causing the death of Russell and injuries to Prentice.

The theory of negligence of the Power Company consisted of failure to provide the plaintiffs with a safe place to work by failing to install the pole properly.

There was testimony from which the jury could deduce that originally the pole had been set by and under the supervision and control or at the direction of the Power Company. There

was little dispute that a 40-foot pole should be placed in the ground at a minimum depth of 6 feet where the soil consisted principally of sand and gravel. A Power Company witness so testified. It was factually established that the pole was set in the ground at a depth of approximately 4½ feet.

As to a stranger — such as Bradley and its employees — it could constitute a latent defect sufficient to be the basis for a finding of negligence if the defect were sufficiently associated with the occurrence of the accident. In *Paul* v. *Staten Is. Edison Corp.* (2 A D 2d 311, 319) the court said: "A latent danger is one that is neither visible nor discoverable by *ordinary* inspection or tests."

The main factual problem here is whether there is such association between the defect and the occurrence. There is testimony that about 10 days before the accident the employees of Bradley had removed the east-west service lines. A guy wire was attached to the upper part of the pole and anchored in the ground about 20 feet west of it. The day before the accident an employee of the telephone company had climbed the pole and removed wires without incident and considered it to be a "very good blackjack" pole and safe to climb. The conclusion is very strong that on the day of the accident the cutting of all of the remaining wires — the pole then being self-supporting — had a definite part in causing its fall.

Although we agree with the Trial Term that the complaints against defendant Power Company and Torrington should not have been dismissed, we conclude that the verdicts against both these defendants are against the weight of evidence and that there should be a new trial as to them. Although it was established that the pole was not set as deeply in the ground as standard practice suggested, the part that this difference of one and one-half feet in depth played in the actual happening of events is markedly speculative in this record. The pole had stood very well for a long period and not until the combined influence of digging in its vicinity and cutting wires attached to it was any change in its stability noted. We thus think that the attribution of the fall to Power Company runs against the weight of the evidence.

The averment of negligence in the complaint as to Torrington consisted of allegations that the work performed by it in proximity to the pole weakened the bank which supported the pole and thus contributed to the happening of the accident. The proof showed that Torrington, in performing its contract with the State of New York, was in the process of widening the road in the vicinity of the pole and as is customary in such construc-

tion work left an island or peninsula around the pole until such time as it was removed by the Power Company or its contractor.

No work had been performed near the pole by Torrington for approximately 10 days prior to the date of the accident. But although the legal sufficiency of the proof against Torrington presents a close question, we conclude that prima facie a case has been made out based in part on the admission by one of Torrington's officers that the excavation here was closer to the pole than the usual practice; and we agree with the Judge at Trial Term that the complaint as to this defendant ought not to have been dismissed as a matter of law. We are of opinion, however, that the verdict against defendant Torrington was against the weight of evidence and that there should be a new trial as to such defendant.

It is contended that the plaintiffs were guilty of contributory negligence. The foreman of Bradley testified that the men were working under his instructions and that while they could refuse to climb a pole, it was not customary. He further testified that on the day in question he examined the pole to establish whether or not in his opinion it was safe to climb and thereafter instructed the plaintiffs to go up the pole, remove the transformer, cut the wires and stay on the pole awaiting his further instructions. The foreman further testified that he had three pike poles driven into the ground on three sides of the pole for extra precaution. We conclude that the deceased employee and the injured plaintiff employee were not negligent as a matter of law and that a question for the jury exists on the issue and was properly submitted.

Although the court submitted to the jury the question of negligence of Bradley and Williams, the employer of the deceased and injured employees, as third-party defendants in the claim over of the Power Company, the liability of the third-party defendant must here be treated, as the court at Trial Term ultimately treated it, as a question of law.

It was convenient and proper under the practice, to submit all possible factual questions flowing from the accident to the jury at one time, with the reservation that as to the third-party defendant it might ultimately be held, as it was here, that the problem was one of law and not of fact.

We agree thoroughly with the Judge at Trial Term that no liability over is demonstrated on this record. If the Power Company was liable at all it was for failing to put the pole deep enough in the ground. Such a liability cannot be passed along to other active tort persons not sued by the plaintiffs. The

indemnity agreement between the Power Company and Bradley and Williams did not cover a liability arising from a pre-existing defect for which the Power Company was responsible.

We add that the trial was conducted by the Judge at Trial Term carefully and competently and our direction for a new trial is based on the conclusion that we reach that the verdict is against the weight of evidence.

Judgments and orders dismissing the complaints as to the third-party defendants Bradley and Williams should be affirmed, with costs against the New York State Electric and Gas Corporation; judgments against the defendant New York State Electric and Gas Corporation and Torrington Construction Company should be reversed on the law and the facts and a new trial granted, with costs to abide the event.

BERGAN, P. J., COON and REYNOLDS, JJ., concur; GIBSON and HERLIHY, JJ.. concur in the result in the following memorandum: We consider that the verdict against the Power Company was warranted by the evidence but since we concur in the majority view that the verdict against Torrington was not, we would grant a new trial to the Power Company as well, in the interests of justice. (Cf. *Carmody-Wait, New York Practice,* vol. 9, § 465, p. 168; *Pangburn* v. *Buick Motor Co.,* 211 N. Y. 228, 236; *Goines* v. *Pennsylvania R. R. Co.,* 3 A D 307, 311; *Grote* v. *Jonbert Realty Corp.,* 1 A D 2d 111, 114.)

Judgments and orders dismissing the complaints as to the third-party defendants Bradley and Williams affirmed, with costs against the New York State Electric and Gas Corporation; judgments against the defendant New York State Electric and Gas Corporation and Torrington Construction Company, reversed, on the law and the facts, and a new trial granted, with costs to abide the event.